UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

GORSS MOTELS, INC.,                    :
    Plaintiff,                         :
                                       :
v.                                     :        No. 3:17cv126 (DJS)
                                       :
ERIC RYAN CORPORATION,                 :
    Defendant.[1]                       :

RULING ON MOTIONS FOR SUMMARY JUDGMENT

The plaintiff, Gorss Motels, Inc. ("Gorss"), alleges that the defendant, The Eric Ryan

Corporation ("Eric Ryan"), violated the Telephone Consumer Protection Act of 1991, as

amended by the Junk Fax Prevention Act of 2005, 47 U.S.C. § 227 ("TCPA"), by sending three

unsolicited facsimile advertisements ("faxes") to Gorss during the time period between March 1,

2013, and December 1, 2013.  Both parties have moved for summary judgment. For the reasons

stated below, Gorss's motion for summary judgment is granted and Eric Ryan's motion for

summary judgment is denied.

## I.    FACTS

Gorss formerly operated a Super 8 Motel in Connecticut as a franchisee of the Wyndham

Hotel Group ("Wyndham"). Eric Ryan provides telecommunications and utility services,

---

[1] The Complaint also named as defendants "JOHN DOES 1-5 [who] will be identified through discovery, but are not presently known." (Doc.  #1, at 3, ¶ 10). The plaintiff did not subsequently identify the Doe defendants and deleted any reference to those defendants in its Motion for Summary Judgment. The Court deems the claims against the defendants "JOHN DOES 1-5" abandoned. Those claims would be, in any event, subject to dismissal due to the failure to identify any Doe defendant. *See Delrosario v. City of New York*, No. 07 Civ. 2027 (RJS), 2010 U.S. Dist. LEXIS 20923, at *12 (S.D.N.Y. March 4, 2010) ("Where discovery has closed and the Plaintiff has had ample time and opportunity to identify and serve John Doe Defendants, it is appropriate to dismiss those Defendants without prejudice.")

including auditing utility and telephone bills and providing consulting services relating to such

bills.

In 1988 Gorss entered into a Franchise Agreement with Super 8 Motels, Inc. ("Super 8")

that granted Gorss the right to operate a Super 8 Motel in Cromwell, Connecticut for a term of 20

years. The Franchise Agreement included the following language:

> [T]he specifications and quality of items of personal property to be used in the
> franchised motel are established by FRANCHISOR [Super 8] from
> time to time to insure operation in accordance with FRANCHISOR'S standards,
> and further, [FRANCHISEE, i.e., Gorss] agrees to purchase from FRANCHISOR,
> or from such other vendor as FRANCHISOR may approve from time to time, or
> from any other source whose supplies and equipment have been approved in
> writing by FRANCHISOR, prior to acquisition, as meeting the standards and
> specifications designated by FRANCHISOR or conforming to the specimens or
> samples submitted or otherwise made available to FRANCHISEE by FRANCHISOR
> to preserve the uniformity of its System, the following items: mattresses, box springs,
> bed frames, dresser-desks, chairs for use in guest rooms, nightstands, desk lamps,
> luggage racks, carpeting, drapes, sheets, blankets, pillows, pillowcases, bedspreads,
> towels, washcloths, bath mats, facial tissue, toilet tissue, soap, soap wrappers, matches,
> television receivers, and cabinets. FRANCHISOR shall not unreasonably withhold
> approval of such sources for personal property.

(Doc. # 77-4, at 17). On March 11, 2009, Gorss and Super 8[2] extended the 1988 Franchise

Agreement for an additional five years, with an expiration date of August 15, 2014. Neither the

original 1988 Franchise Agreement nor the 2009 five-year extension of that agreement contained

a fax number for Gorss.

On January 20, 2010, Gorss submitted a "Site Contact Form" to Wyndham. The "Current

Contact Information" sections of that form listed the same fax number ((860) 632-8889) for all

categories of contacts, i.e., "Entity Principal Contact," "Site Principal Contact," "General

Manager," and "Customer Care." (Doc. # 96-1, at 2-3). During the time it operated a Super 8

---

[2] By this time, Super 8 Motels, Inc. had changed its name to Super 8 Worldwide, Inc.

Motel in Connecticut, Gorss had one fax machine, which was located behind the motel's front

desk and had the fax number (860) 632-8889.

On September 10, 2014, Gorss and Super 8 Worldwide, Inc. entered into a new 20-year

Franchise Agreement. Section 4.4 of the 2014 Franchise Agreement provided as follows:

> We may offer optional assistance to you with purchasing items used at or
> in the Facility. Our affiliates may offer this service on our behalf. We may
> restrict the vendors authorized to sell proprietary or Mark-bearing items in
> order to control quality, provide for consistent service or obtain volume
> discounts. We will maintain and provide to you lists of suppliers approved
> to furnish Mark-bearing items, or whose products conform to System
> Standards.

(Doc. # 77-4, at 44, ¶ 4.4).

Wyndham Hotel Group is owned by Wyndham Worldwide Corporation. The predecessor

of Wyndham Worldwide Corporation, Hospitality Franchise Systems, Inc., acquired Super 8

Worldwide, Inc. in 1993.

Worldwide Sourcing Solutions, Inc. ("WSSI") is a wholly owned subsidiary of

Wyndham Hotels & Resorts, Inc. and an affiliate of Wyndham. Through its Approved Suppliers

program WSSI supports Wyndham franchisees by negotiating prices, volume discounts, and

commissions for products and services of third parties designated as Approved Suppliers. WSSI

would often enter into an agreement with a vendor (a "Worldwide Sourcing Agreement")

whereby the vendor would be designated as an Approved Supplier. As an Approved Supplier, a

vendor could offer products or services for purchase or use by Wyndham franchisees and would

pay commissions to WSSI. The Approved Supplier program offered discounts to Wyndham

franchisees from the Approved Suppliers. Except as to certain items a franchisee was required to

purchase from Approved Suppliers, a franchisee's participation in the Approved Supplier

program was voluntary.

Wyndham and WSSI disclosed and promoted the Approved Supplier program to franchisees in various ways, including publishing and distributing a "Supplier Directory" to franchisees that identified Approved Suppliers; providing Approved Suppliers with the opportunity to participate at global conferences held for franchisees; and providing franchisees with on-line information regarding Approved Suppliers. WSSI also provided Approved Suppliers with the opportunity to participate in a marketing program in which WSSI arranged for a third party to send faxes to franchisees. Faxes sent through that program were sent to franchisees who had provided their fax numbers to Wyndham or its affiliates.

On October 15, 2010, WSSI and Eric Ryan entered into a Worldwide Sourcing Agreement (the "WSA") pursuant to which Eric Ryan became an Approved Supplier and WSSI agreed to promote Eric Ryan's goods and services to Wyndham franchisees. Eric Ryan paid a marketing fee to WSSI for these promotional services. Eric Ryan was an Approved Supplier from October 2010 through 2013.

Pursuant to the WSA, Eric Ryan was permitted to provide Wyndham with content for five faxes, as well as advertising information for placement on Wyndham's website and in a Wyndham sponsored catalog for the benefit of Wyndham franchisees. Eric Ryan was never provided with databases or contact lists of Wyndham franchisees.

In January 2013 a Wyndham employee requested that Eric Ryan provide content for a "Fax Blast"[3] to be sent by Wyndham to its franchisees. Eric Ryan responded to the request by preparing a flyer providing its contact information and a summary of its services.  The flyer was

---

[3] The term "blast-fax" means "to send (a fax) in multiple copies to numerous recipients at one time." https://www.merriam-webster.com/dictionary/blast-fax

sent to Wyndham for its review and approval with the understanding that it would be sent by
Wyndham via fax to Wyndham's franchisees pursuant to the WSA.

Flyers promoting Eric Ryan's goods and services were faxed to various Wyndham
franchisees, including Gorss, on March 1, 2013, November 1, 2013, and December 1, 2013. All
three faxes (collectively "the Faxes") were successfully sent to Gorss's fax number, i.e., 860-
632-8889.

Wyndham was a customer of Western Printing, a commercial printing company. On
behalf of Wyndham, Western Printing arranged for the Faxes to be transmitted by a fax
broadcasting service named WestFax. Wyndham decided which fax numbers would be targeted
for each of the three faxes and paid Western Printing for its services. Eric Ryan had no business
relationship with Western Printing and never had any direct contact with WestFax.

All of the Faxes advertised the commercial availability of Eric Ryan's services. By way
of example, the March 1, 2013 fax included the following language: "Sign Up Now For a Free
Utility and Telecommunications Bill Review. . . .With no up-front cost, no obligations and
flexible 'fee for service' options, Eric Ryan Corporation makes it easy for its hospitality clients
to set and implement their own cost-cutting priorities for the benefit of their properties." (Doc. #
73-2, at 2). Each fax listed contact information (website, email address, phone number) where
prospective clients could obtain further information about Eric Ryan's services. At the bottom of
each fax, in smaller print, was the following sentence: "To opt out from future faxes, email
strategic.sourcing@wyn.com or call this toll-free number: (877) 764-4212." (*Id.* at 2, 4, 6).

At no time did Gorss attempt to contact Wyndham or WSSI to opt out of faxes
advertising the goods and services of Eric Ryan. Gorss sold the Cromwell Super 8 Motel in
August 2016.

## II.    STANDARD

A motion for summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is appropriate if, after discovery, the nonmoving party "has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  "The burden is on the moving party to demonstrate the absence of any material factual issue genuinely in dispute." *American  International Group, Inc. v. London American International Corp.*, 664 F.2d 348, 351 (2d Cir.1981) (internal quotation marks omitted).

A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute concerning a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, the nonmoving party "must present specific evidence demonstrating a genuine dispute." *Gannon v. UPS*, 529 F. App'x 102, 103 (2d Cir. 2013).

In reviewing the record, the court must "construe the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *Gary Friedrich Enterprises, L.L.C. v. Marvel Characters, Inc.*, 716 F.3d 302, 312 (2d Cir. 2013).  Summary judgment is improper if there is any evidence in the record from which a reasonable factual inference could be drawn in favor of the nonmoving party. *See Security Insurance Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 83 (2d Cir. 2004). In the context of a

summary judgment motion, "'[c]redibility determinations, the weighing of the evidence, and the

drawing of legitimate inferences from the facts are jury functions, not those of a judge.'" *Davis-*

*Garett v. Urban Outfitters, Inc.*, 921 F.3d 30, 46 (2d Cir. 2019) (quoting *Reeves v. Sanderson*

*Plumbing Products, Inc.*, 530 U.S. 133, 150 (2000)).

## III.    DISCUSSION

The material facts in this case are, to a large extent, straightforward and undisputed. The

legal significance of those facts as they relate to the TCPA, however, is very much in dispute.

Gorss contends that the three faxes at issue were unsolicited advertisements sent to it by Eric

Ryan in violation of the TCPA. Eric Ryan responds that, to the contrary, "[t]he faxes received by

Gorss Motels were solicited faxes as Gorss Motels provided express invitation/permission to

receive the faxes in question[]." (Doc. # 89, at 8). Eric Ryan also contends that Gorss "lacks

standing to pursue its TCPA claims." (Doc. # 76, at 1).

The TCPA, as amended by the Junk Fax Protection Act, prohibits the use of "any

telephone facsimile machine, computer, or other device to send, to a telephone facsimile

machine, an unsolicited advertisement . . . ."[4] 47 U.S.C. §227(b)(1)(C). For purposes of the

TCPA, the "sender" of a fax is "the person or entity on whose behalf a facsimile unsolicited

advertisement is sent or whose goods or services are advertised or promoted in the unsolicited

advertisement." 47 C.F.R. § 64.1200(f)(10).[5] An "unsolicited advertisement" is defined in the

TCPA as "any material advertising the commercial availability or quality of any property, goods,

---

[4] There is an exception to this prohibition known as the established business relationship
exception ("EBR"). The record in this case is devoid of any evidence that there was an
established business relationship between Gorss and Eric Ryan, and Eric Ryan has specifically
stated that it "is not trying to establish that it has an EBR with Gorss Motels . . . ." (Doc. # 89, at
32).

[5] The TCPA directs the FCC to "prescribe regulations to implement the requirements" of the
Junk Fax Protection Act. 47 U.S.C. § 227(b)(2).

or services which is transmitted to any person without that person's prior express invitation or

permission, in writing or otherwise." 47 U.S.C. § 227(a)(5).

The TCPA authorizes a person or entity to bring "an action to recover for actual

monetary loss from . . . a violation, or to receive $500 in damages for each . . . violation,

whichever is greater."  47 U.S.C. § 227(b)(3)(B).[6] Gorss "requests that the Court award Plaintiff

$1,500.00 in statutory damages (3 Faxes x $500.00)." (Doc. # 72-1, at 3).

## A.  STANDING

1.  Article III Standing

Eric Ryan states its contention that Gorss lacks Article III standing as follows:

> Gorss Motels claims that its injuries were caused by the non-compl[iant]
> opt-out notices on the faxes in question. However, Gorss Motels cannot
> satisfy its burden of establishing Article III standing as there is no causal
> connection between its claimed injuries, namely the loss of time and the
> loss of use of its fax machine, paper, and ink toner and Eric Ryan's alleged
> violation of the TCPA, namely the transmission of faxes with non-compl[iant]
> opt-out notices.

(Doc. # 76-1, at 30). Gorss did allege in the Complaint that the Faxes did not contain opt-out

notices that complied with the requirements of the TCPA. With regard to Gorss's injuries,

however, the Complaint alleges the following:

> Unsolicited faxes damage their recipients. A junk fax recipient loses the
> value of its fax machine, paper, and ink toner. An unsolicited fax wastes the
> recipient's valuable time that would have been spent on something else. A
> junk fax interrupts the recipient's privacy. Unsolicited faxes prevent fax
> machines from receiving authorized faxes, prevent their use for authorized
> outgoing faxes, cause undue wear and tear on the recipients' fax machines, and
> require additional labor to attempt to discern the source and purpose of the
> unsolicited message.

---

[6] The TCPA also authorizes treble damages "[i]f the court finds that the defendant willfully or
knowingly violated this subsection . . . ." 47 U.S.C. § 227(b)(3). Gorss has explicitly stated that it
"does not seek treble damages in this motion . . . ." (Doc. # 72-1, at 3 n.1).

(Doc. # 1, at 2, ¶ 3). Contrary to Eric Ryan's assertion that Gorss is claiming its injuries were caused by non-compliant opt-out notices, Gorss is claiming its injuries were caused by the receipt of unsolicited fax advertisements.

In *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016), the Supreme Court reiterated the requirement that a plaintiff clearly allege facts demonstrating an injury that is both particularized and concrete on order to establish standing under Article III of the U.S. Constitution. Although "a bare procedural violation, divorced from any concrete harm" would not "satisfy the injury-in-fact requirement of Article III," an intangible harm may be concrete and "the violation of a procedural right granted by statute can be sufficient in some circumstances to constitute injury in fact." *Spokeo*, 136 S. Ct. at 1549.

Other courts within this district have found the same allegations of harm that are raised in the instant case sufficient to demonstrate concrete injury: "[I]t is clear there exists ample case law supporting the proposition that the TCA has created a legally cognizable interest in protecting individuals and entities from unwanted faxes, and that the violation of the statute creates a real and not abstract harm." *Gorss Motels, Inc. v. Sysco Guest Supply, LLC*, Civil Case No. 3:16-cv-01911-VLB, 2017 U.S. Dist. LEXIS 133488, at *15 (D. Conn. Aug. 21, 2017) (internal quotation marks omitted); *see also Gorss Motels Inc. v. Sprint Communications Co., L.P.*, No. 3:17-cv-546 (JAM), 2020 U.S. Dist. LEXIS 27957, at *14 (D. Conn. Feb. 19, 2020) ("Numerous courts have correctly concluded that an injury-in-fact arises from the wasted time that a junk fax recipient spends reviewing an unsolicited fax and the use of paper and ink toner in printing the fax advertisements.").

This Court likewise, and for the same reasons stated in the cases quoted above, concludes

that the allegations of harm specified in the Complaint are sufficient to establish Article III

standing.

2.  Zone of Interests

Eric Ryan also argues that Gorss is not within the "zone of interests" protected by the

TCPA and, as a result, lacks prudential standing to pursue this action. Gorss disputes the

applicability of a prudential standing requirement in a case alleging a violation of the TCPA and

contends in the alternative that it has, in any case, demonstrated that it falls within the statutory

zone of interests.

"Prudential standing is a misnomer as applied to the zone-of-interests analysis, which

asks whether this particular class of persons has a right to sue under the substantive statute."

*Lexmark International, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 127 (2014)

(internal quotation marks and alteration omitted). "In sum, the question . . . is whether [the

named plaintiff] falls within the class of plaintiffs whom Congress has authorized to sue under

[the pertinent statute]. In other words, we ask whether [the named plaintiff] has a cause of action

under the statute." *Id.* at 128.

Eric Ryan's argument that Gorss does not fall within the zone of interests intended to be

protected by the TCPA relies to a large extent on the rulings in two cases: *Stoops v. Wells Fargo

Bank, N.A.*, 197 F. Supp. 3d 782 (W.D. Pa. 2016) and *Telephone Science Corp. v. Asset

Recovery Solutions, LLC*, No. 15-CV-5182, 2016 U.S. Dist. LEXIS 104234 (N.D. Ill. Aug. 8,

2016).

In *Stoops*, the plaintiff had "purchased at least thirty-five cell phones and cell phone

numbers with prepaid minutes for the purpose of filing lawsuits under the Telephone Consumer

Protection Act." 197 F. Supp. 3d at 788. The court concluded that the plaintiff's interests, "which include purchasing cell phones with the hope of receiving calls from creditors for the sole purpose of collecting statutory damages," were "not within the zone of interests intended to be protected by the TCPA." *Id.* at 805.

In *Telephone Science Corp.*, the plaintiff TSC designed a service called "Nomorobo" to help consumers avoid robocalls. "Specifically, TSC maintains a 'honeypot' of telephone numbers to which TSC subscribes. . . . Nomorobo analyzes calls placed to TSC's honeypot numbers using a specialized algorithm, enabling it to . . . distinguish between calls placed by robocallers and calls placed by non-robocallers." *Telephone Science Corp.*, 2016 U.S. Dist. LEXIS 104234 at *2 (internal quotation marks omitted). TSC initiated an action under the TCPA alleging that the defendant had placed numerous robocalls to telephone numbers maintained by TSC. The court found that "instead of being 'unwanted and unwelcome,' robocalls to TSC numbers provide the analytical basis on which the Nomorobo service operates." *Id.* at *48. "Because TSC has failed to allege an interest with which the TCPA is concerned - - privacy invasion, nuisance, public safety threat, and/or the shifting of costs based on unwelcome robocalls - - the Court finds that TSC lacks statutory standing under [the TCPA]." *Id* at *53.

In *Bais Yaakov of Spring Valley v. Educational Testing Service*, 367 F. Supp. 3d 93 (S.D.N.Y. 2019), the defendant, relying on *Stoops* and *Telephone Science Corp.*, argued that the plaintiff fell outside the zone of interests the TCPA was intended to protect "because 'the TCPA was not intended to protect opportunistic serial plaintiffs bent on shaking down corporations with frivolous claims.'" *Id.* at 114 (quoting Defendant's Mem. of Law in Supp. of Mot. for Summ. J.). The court found *Stoops* and *Telephone Science Corp.* "readily distinguishable," because "[i]n this case, the record is devoid of any evidence that Plaintiff set up its fax number in order to

11

receive faxes upon which it might assert TCPA claims. To the contrary, the evidence shows that

Plaintiff utilized its fax machine for business purposes and received unsolicited fax

advertisements during its course of regular business." *Id.* at 115. The court found that the

plaintiff had "prudential standing." *Id.* at 116; *see also Sprint Communications Co.*, 2020  U.S.

Dist. LEXIS 27957, at \*17 (Because "Gorss had a fax machine for its legitimate business

purposes as a motel at the time that it received the unsolicited faxes in question . . . Gorss was . .

. well within the zone of interests [protected by the TCPA]").

In support of its argument that Gorss falls outside the zone of interests protected by the

TCPA, Eric Ryan stresses the fact that "[b]etween 2016 and 2017 Gorss Motels initiated

approximately 21 lawsuits alleging TCPA violations according to the faxes it collected." (Doc. #

90, at 7). Eric Ryan contends that "[t]he TCPA was not designed to protect professional plaintiffs

who seek to generate litigation based on technical statutory violations." (*Id.* at 6) (citing *Stoops*

and *Telephone Science Corp.*). A similar argument was made and rejected in *Bais Yaakov*: "In

the absence of authority to the contrary, the Court concludes that Plaintiff's filing of other TCPA

lawsuits does not remove it form the zone of interests that the TCPA was intended to protect."

367 F. Supp. 3d at 115; *see also Sprint Communications Co.*, 2020 U.S. Dist. LEXIS 27957, at

\*17 (same).

The Court concurs with the rulings in *Bais Yaakov* and *Sprint Communications Co.* and

finds that Gorss falls within the zone of interests protected by the TCPA.

## B.  LIABILITY UNDER THE TCPA

As previously noted, the TCPA, as amended by the Junk Fax Protection Act, prohibits the use of "any telephone facsimile machine, computer, or other device to *send*, to a telephone facsimile machine, an *unsolicited advertisement* . . . ." 47 U.S.C. §227(b)(1)(C) (emphasis added). The Court will proceed to determine whether the Faxes were advertisements, whether the Faxes were "sent" by Eric Ryan, and whether the Faxes were unsolicited.

### 1.  The Faxes as Advertisements

The undisputed facts clearly demonstrate that the Faxes were advertisements. The content of each fax concerned "the commercial availability or quality of . . . [Eric Ryan's] services." 47 U.S.C. §227(a)(5). Additionally, Eric Ryan admits that the Faxes "describe[] the commercial availability of property, goods, or services offered by you." (Doc. # 73-4, at 33, ¶ 1).

### 2.  Sender of the Faxes

The facts likewise demonstrate that Eric Ryan fit within the applicable definition of a fax "sender." Eric Ryan's Local Rule 56(a)2 Statement in opposition to Gorss's motion for summary judgment includes the following facts:  "Eric Ryan prepared a color flyer that would provide Eric Ryan's contact information and a summary of its services to franchisees . . . with the understanding that it would be sent by Wyndham via fax to the franchisees of Wyndham pursuant to the Worldwide Sourcing Agreement." (Doc. # 89-1, at 25, ¶¶ 28, 29). There is no doubt that Eric Ryan was "the person or entity on whose behalf" the Faxes were sent or "whose goods or services are advertised or promoted" in the Faxes. 47 C.F.R. § 64.1200(f)(10).

3.   Status of the Faxes as Solicited or Unsolicited

According to Eric Ryan, "the question of whether each facsimile was solicited or unsolicited is the driving question of potential TCPA liability in the case at hand." (Doc. # 89, at 16). On this point the parties (and the Court) agree.

Since there appears to have been no communication between Gorss and Eric Ryan prior to the transmission of the Faxes, it is not surprising there is no evidence that Gorss provided a prior invitation or permission to transmit fax advertisements that specifically mentioned Eric Ryan.  Eric Ryan argues instead that "by becoming a franchisee, by participating in the Approved Supplier Program, and by repeatedly providing its fax number to Wyndham, Gorss Motels provided prior express invitation or permission to receive the faxes in question." (*Id*. at 17). For its part, Gorss maintains that this question is governed by the 1988 Franchise Agreement (as extended in 2009) and that there was nothing in that Agreement that constituted prior express invitation or permission for Eric Ryan to send the Faxes to Gorss.

In making its argument that Gorss had provided prior express invitation or permission to receive the Faxes, Eric Ryan cites repeatedly to the decision of the Eleventh Circuit in *Gorss Motels, Inc. v. Safemark Systems, LP*, 931 F.3d 1094 (11th Cir. 2019), contending that "it would be difficult to find a more analogous case as the facts are nearly identical." (Doc. # 89, at 33). In *Safemark*, Gorss and another Wyndham franchisee claimed that the defendant Safemark violated the TCPA by sending two unsolicited fax advertisements, one sent in 2013 and one sent in 2015.

The Eleventh Circuit concluded that the two faxes at issue were in fact solicited and therefore not prohibited by the TCPA, because "the hotels executed franchise agreements in which they listed their fax numbers *and* agreed to receive information from their franchisor's

14

affiliates,[7] including Safemark." *Safemark*, 931 F.3d at 1101-02. The Court also referenced

WSSI's Approved Supplier program and noted that Safemark was "an approved supplier of

safes for Wyndham franchisees." *Id*. at 1097. With regard to Gorss, it is clear that the franchise

agreement the Eleventh Circuit was relying upon was the 2014 Franchise Agreement. The Court

specifically referenced section 4.4 of that Agreement in which "the hotels agreed that Wyndham

'may offer optional assistance to [them] with purchasing items used at or in the Facility'" and

that "Wyndham's 'affiliates may offer this service on [its] behalf.'" *Id.* at 1097 (quoting section

4.4 of the franchise agreement). The Court then noted that "[t]he hotels provided their fax

numbers in a later section of the [franchise] agreement." *Id.*

Because the decision in *Safemark* regarding Gorss was based on the 2014 Franchise

Agreement, and that Agreement was not in effect at the time the Faxes at issue in this case were

sent in 2013,[8] the Court does not agree with Eric Ryan that the facts in *Safemark* are "nearly

identical" to the facts in this case. Eric Ryan contends that while the 2014 Franchise Agreement

was not in effect at the time the Faxes were sent in 2013, this Court should nonetheless adopt the

same reasoning followed by the Eleventh Circuit in *Safemark*. According to Eric Ryan, "by

entering into the 1988 Franchise Agreement, Gorss Motels agreed to participate in the Approved

Supplier Program." (Doc. # 90, at 8). The Approved Supplier program is run by WSSI, which is

an affiliate of Wyndham. Wyndham in turn is owned by Wyndham Worldwide Corporation,

whose predecessor, Hospitality Franchise Systems, Inc., did not acquire Super 8 Worldwide, Inc.

until 1993, well after the execution of the 1988 Franchise Agreement. Thus, the fact that Gorss

---

[7] The Eleventh Circuit's decision does not discuss the difference between an affiliate and an approved vendor/supplier, and it is unclear why that Court characterizes Safemark as an affiliate.
[8] S*afemark* does not address the fact that one of the two faxes at issue in that case was sent before Gorss entered into the 2014 Franchise Agreement.

entered into a Franchise Agreement in 1988 does not indicate its agreement to participate in the

Approved Supplier program.

Eric Ryan also argues that "[t]he 1988 Franchise Agreement contains words equivalent in

meaning to the words Gorss argues are necessary to convey prior express permission." (Doc. #

90, at 9). Eric Ryan then quotes the following language included in the 1988 Franchise

Agreement:

> [S]pecifications and quality of items of personal property to be used in the
> franchised motel are established by FRANCHISOR [Super 8] from
> time to time to insure operation in accordance with FRANCHISOR'S standards,
> and further, [FRANCHISEE, i.e., Gorss] agrees to purchase from FRANCHISOR,
> or from such other vendor as FRANCHISOR may approve from time to time, or
> from any other source whose supplies and equipment have been approved in
> writing by FRANCHISOR, prior to acquisition, as meeting the standards and
> specifications designated by FRANCHISOR or conforming to the specimens or
> samples submitted or otherwise made available to FRANCHISEE by FRANCHISOR
> to preserve the uniformity of its System . . . .

*Id.*

Eric Ryan's quote omits the remaining portion of that lengthy sentence, i.e., "the

following items: mattresses, box springs, bed frames, dresser-desks, chairs for use in guest

rooms, nightstands, desk lamps, luggage racks, carpeting, drapes, sheets, blankets, pillows,

pillowcases, bedspreads, towels, washcloths, bath mats, facial tissue, toilet tissue, soap, soap

wrappers, matches, television receivers, and cabinets." (Doc. # 77-4, at 17).   In other words,

Gorss agreed to purchase certain items of personal property specified in the 1988 Franchise

Agreement from Super 8 or from another source approved by Super 8. That agreement is

completely unrelated to the types of services provided by Eric Ryan.

In *Safemark,* the Eleventh Circuit found that "[b]y agreeing that Wyndham affiliates

could offer assistance with purchasing items for the hotels *and by providing their fax numbers*,

the hotels gave express permission to receive fax advertisements from affiliates, including

Safemark." *Safemark*, 931 F.3d at 1100 (emphasis added). Neither the 1988 Franchise

Agreement nor the 2009 five-year extension of that Agreement contains Gorss's fax number.

Nonetheless, Eric Ryan argues that "the facts and evidence clearly demonstrate that Gorss

Motels provided its fax number to Wyndham prior to the faxes in question being sent." (Doc. #

90, at 10). The evidence Eric Ryan refers to are "Site Contact Forms" Gorss submitted to

Wyndham in 2010 and 2015. The Court will disregard the 2015 Form, since a communication

made in 2015 could not constitute prior express permission for a fax sent in 2013. The 2010 "Site

Contact Form" simply lists general contact information (address, phone number, email address,

and fax number) for different areas of responsibility within the motel, e.g., site principal contact,

general manager, guest services. (Doc. # 96-1, at 2-3). The fax number provided on the Form for

all areas of responsibility was the 860 632-8889 number for the one fax machine at the motel.

"Express permission to receive a faxed ad requires that the consumer understand that by

providing a fax number, he or she is agreeing to receive the faxed advertisements." *In re Rules &*

*Regulations Implementing the Telephone Consumer Protection Act (TCPA) of 1991*, 68 Fed.

Reg. 44144, 44168 (F.C.C. 2003). No reasonable juror could find that by providing a fax number

in a contact list, Gorss understood that it was agreeing to receive the Faxes sent by Eric Ryan (or

any faxed ads for that matter).

Eric Ryan also maintains that a recent decision in this district supports its position. In

*Gorss Motels, Inc. v. Otis Elevator Co.*, 422 F. Supp. 3d 487 (D. Conn. 2019), the Honorable

Victor A. Bolden held that a fax advertisement sent to Gorss on August 13, 2015 did not violate

the TCPA. That fax advertised the products and services of the Otis Elevator Company, which

was a Wyndham-approved vendor. Judge Bolden based his decision on "two agreements entered

into by Gorss Motels that ultimately provide the requisite 'prior express invitation or

permission." *Id.* at 501 (quoting 47 U.S.C. § 227(a)(5)). "First, the 2014 Franchise Agreement

specifically addressed WSSI's Approved Supplier program, which provided that Wyndham

affiliates may offer assistance in purchasing approved systems conforming to system standards.

Second, [a 2014 stand-alone] Property Improvement Plan Report stated that Gorss's contact

information could be used by Wyndham's approved vendors for the  purpose of their offering

[Gorss] products and services." *Id.* (internal quotation marks and citations omitted. Neither of the

two documents relied upon by Judge Bolden were in effect in 2013, which is when the Eric Ryan

Faxes were sent. Thus, the decision in *Otis Elevator* has no bearing on the decision in this case.

The Court finds an even more recent decision in this district to be instructive. In *Gorss*

*Motels Inc. v. Sprint Communications Co., L.P.*, No. 3:17-cv-546 (JAM), 2020 U.S. Dist. LEXIS

27957 (D. Conn. Feb. 19, 2020), Gorss Motels claimed that nine faxes advertising Sprint's

products and services were sent to it in violation of the TCPA. Sprint moved for summary

judgment, arguing in part that Gorss had given its prior express invitation or permission to

receive the faxes. Seven of the nine faxes at issue in Sprint were sent before Gorss entered into

the 2014 Franchise Agreement. As to those seven faxes, Judge Meyer found Sprint's reliance on

the 2014 Franchise Agreement to be misplaced:

> Sprint relies most heavily on the terms of the 2014 Franchise Agreement. But
> this agreement was signed in September 2014, which was *after* seven of the
> nine faxes that are at issue in this case had already been sent. So anything
> in the 2014 Franchise Agreement is irrelevant to all but the last two faxes
> at issue in the complaint.

*Id.* at *8.

The Court finds that Gorss did not provide prior express invitation or permission to

receive any of the three faxes at issue in this case. Consequently, all of those faxes were

unsolicited. Since Eric Ryan does not claim that the established business relationship exception

applies, each of the three faxes was an unsolicited advertisement sent to Gorss by Eric Ryan in

violation of the TCPA.

CONCLUSION

For the reasons stated above, Gorss's motion for summary judgment (**doc. # 72**) is

**GRANTED** and Eric Ryan's motion for summary judgment (**doc.# 76**) is **DENIED**.

Judgment shall enter in favor of the plaintiff Gorss Motels, Inc. against the defendant Eric

Ryan Corporation in the amount of $1,500.00 and the Clerk shall close the file.

SO ORDERED this    21st       day of May,  2020.

_____/s/ DJS_____
                Dominic J. Squatrito
                United States District Judge